Jones, P. J.
*804 *386 A jury convicted Whittier Buchanan of several crimes, including kidnapping with intent to commit a sex offense ( Pen. Code, § 209, subd. (b)(1) ).[1] The trial court found certain enhancement allegations true and sentenced Buchanan to 60 years to life in prison, which included 10 years for two prior serious felony convictions (§ 667, subd. (a)(1)). Buchanan appeals, raising claims of instructional and sentencing error. The Attorney General contends the court made several sentencing errors.
*387 We affirm the judgment of conviction and remand for resentencing.
FACTUAL AND PROCEDURAL BACKGROUND
The prosecution charged Buchanan with kidnapping to commit a sex offense ( § 209, subd. (b)(1) ; count 1); assault with intent to commit a sex offense (§ 220, subd. (a)(1); count 2); and failure to register as a sex offender (§§ 290, subd. (b), 290.018, subd. (b); count 3). The information alleged Buchanan had seven prior strike convictions (§§ 667, subds. (b)-(i); 1170.12), six prior serious felony convictions (§ 667, subd. (a)(1)), and that he had served seven prior prison terms (§ 667.5, subd. (b)). The information also alleged that as to count 1, Buchanan was a habitual sex offender (§ 667.71, subds. (b) & (e)).
Prosecution Evidence
A. Buchanan's Prior Convictions
In 1990, Buchanan was convicted of four counts of selling cocaine to a Drug Enforcement Administration agent. In 1995, Buchanan sexually assaulted a woman; the following year, he was convicted of forcible rape, forcible oral copulation, and sexual battery. He was sentenced to state prison, and was ordered to register as a sex offender. In 2017, Buchanan was on parole.
B. The Incident Involving Jane Doe
In 2017, Doe was a college student. She was five feet four inches tall and weighed 110 pounds. At about 9:00 p.m. on a May 2017 evening, Doe went to a birthday party, where she drank a beer, and a shot of vodka, "[m]aybe a little bit more than that." A few hours later, Doe and her friends went to a nearby bar, where she drank a "fish bowl" with several other people.[2] Doe and her friends stayed at the bar until 2:00 a.m. Over the course of the evening, Doe had approximately seven shots of alcohol.
When Doe left the bar, she was intoxicated but coherent. She and her friends went to a restaurant. After about 15 or 20 minutes at the restaurant, Doe ordered an Uber, which arrived at approximately 2:30 a.m. Doe checked the license plate, and got into the sedan. The driver-a Caucasian man-took her to her house. During the ride, Doe realized she did not have her keys, and *388 she got upset. Doe, however, assured the driver she would be alright. She got out of the car and sat on the front steps of her house. The Uber left. The street was dark and deserted.
Doe called her father, who had a spare key to her house, and left him a voicemail asking him to bring the spare key. As she sat on the front step, an African-American *805 man-later identified as Buchanan-walked up to her and said, " 'It's unsafe out here.' " Buchanan grabbed Doe's elbow. Doe mistakenly thought Buchanan was her Uber driver, so she stood up and followed him to his vehicle, a Chevy Astro van. Doe got into the front passenger seat, still thinking Buchanan was her Uber driver. She called her father and left him another voicemail, saying she was fine, and that she was in an Uber. Doe's father called back and told Doe to ask the driver to take her to a nearby Safeway that was open 24 hours.
Buchanan agreed, but then drove in the opposite direction, to a "woodland looking area." At that point, Doe realized "something was wrong" and "asked to be dropped off anywhere." Buchanan refused to let Doe out of the car and said Doe " 'wasn't going anywhere.' " Doe panicked and screamed. Buchanan covered Doe's mouth with his hand to muffle her scream. After a short struggle, Doe removed Buchanan's hand and climbed into the back seat. Shortly thereafter, Buchanan said to Doe in an ominous tone, " 'Now you've ... got me. You are going to get me into trouble. You made me mad.' "
Doe was terrified. She said, " 'take all my money. Just let me off anywhere.' " Buchanan took the money but kept driving. He remarked that Doe " 'looked like a girl who gives good head,' " and threatened she had " 'better give him the best head of his life.' " Doe thought Buchanan was going to rape her, and feared he would "hurt, maybe kill [her]" if she did not "sexually please him." Trying to placate Buchanan, Doe responded, " 'Yeah. Sure. Anything. Just please don't hurt me.' " Until that point, Doe and Buchanan had not discussed any sexual acts, and Doe had not flirted with Buchanan. She did not tell Buchanan she had been raped. Doe did not want to perform oral sex on Buchanan, but she agreed, to distract him while she tried to escape.
Doe could not find a door handle, so she "tinkered with the automatic window switch." The window was partially open but it "didn't roll down." As Doe concentrated on pulling down the window, she tried to distract Buchanan by asking him questions. Buchanan became suspicious and yelled, " 'Are you planning something back there?' " Not sober enough to think of an excuse, Doe responded: " 'I'm trying to get the window down.' " Buchanan seemed angry. He said, " 'Don't you dare' " and reached for Doe. Doe began climbing through the window, and Buchanan grabbed her torso and legs.
*389 Doe managed to climb through the window. She landed on a curb, on her knees and elbows. The van slowed to a stop, and Doe saw Buchanan's face through the driver-side window. He had a "displeased" expression. Doe screamed for help, and Buchanan drove off. Doe was in the van for a total of 30 minutes.
A neighbor heard Doe repeatedly scream " 'Help me, help me' " in a desperate voice. The neighbor ran outside and saw Doe sitting in a driveway across the street. He approached her. Doe-terrified-asked, " 'Are you going to rape me?' " After the neighbor assured Doe he would help her, Doe said "her Uber driver had tried to rape her" and "was going to make her suck his dick." Another neighbor-who had also heard the screams-called 911.
C. Police Investigation
When the police arrived, Doe was panicked. She seemed intoxicated and was jittery but did not appear to be under the influence of drugs. Doe told the police she was in a minivan, and that the driver *806 refused to let her leave "unless she orally copulated him." Doe said she escaped but that her phone was in the van. She gave the police a description matching Buchanan. Later that morning, the police apprehended Buchanan, and Doe identified him in an in-field show-up.
In Buchanan's van, police found Doe's phone, suspected methamphetamine, and a pipe with burn marks and residue. There was an unused condom on the floor between the driver and passenger seats. During the incident, Buchanan was wearing a GPS monitor. The GPS locations matched Doe's description of where she entered and exited Buchanan's van.
The police interviewed Buchanan twice. In the first interview, Buchanan told the police he saw Doe crying. She said she could not find her house keys, so Buchanan offered to let her sit in his van. Doe spent a few minutes in the front passenger seat of the van. The passenger door never closed and the van did not move. Doe called someone to give her a house key. While she waited for the key, Doe explained how she lost her keys, and "she went on about her drinking problems and psychological stuff." Eventually, Doe got out of the van and Buchanan drove away.
In a second interview, Buchanan described the incident differently. He told the police he saw a girl with "long ... legs," wearing short shorts, and knee-high boots. She was crying. Buchanan thought Doe was attractive and imagined having sex with her. Doe got in Buchanan's van; she said she had been raped and forcibly orally copulated. Based on Doe's appearance, Buchanan believed this had happened. Doe asked Buchanan to drive her *390 home and offered him money. She told Buchanan she had " 'some kind of mental or psychological mind problem' " and a "drinking problem."
At some point, Buchanan stopped the van because he was tired of driving, and he and Doe talked in the backseat. Doe offered to have sex with Buchanan and to " 'suck [his] dick real good.' " She showed Buchanan her vagina. Buchanan though it was "too good to be true" and became concerned, because Doe's "demeanor kept flipping," from "crying to totally sober." Eventually, he told Doe to get out of the car and she "went ... 5150 on [him]" and began yelling for help. Buchanan drove away.
Buchanan denied kidnapping Doe or holding her in the van. He denied using methamphetamine and claimed it belonged to a homeless woman.
Defense Evidence
At trial, Buchanan conceded his description of the incident during the first police interview was different than the description he gave in the second interview. Buchanan's trial testimony was somewhat similar to his second police interview but added certain details, including that Doe smoked methamphetamine in his van. Some of Buchanan's trial testimony differed from the second police interview, i.e., Buchanan testified he was not attracted to Doe. A character witness testified for Buchanan.
Verdict and Sentence
In 2017, the jury convicted Buchanan of the charges, and the court sentenced him to 60 years to life in prison.
DISCUSSION
*807 I.**
II.
The Matter Must Be Remanded for Resentencing
At the 2017 sentencing, the trial court struck one prior serious felony conviction and found the remaining prior felony convictions true. It found the *391 habitual sex offender allegation true. The court made no express findings regarding the prior prison term allegations.
The court sentenced Buchanan to an indeterminate sentence of 60 years to life in prison, comprised of the following: an indeterminate term of 50 years to life on count 1 (kidnapping with intent to commit a sex crime), plus 5 years, for the prior serious felony conviction enhancement attendant to count 1. To this 55 years, the court added 5 years "for the prior conviction as to count [2]." The court imposed a concurrent determinate term of 12 years on count 2 (assault with intent to commit a sex crime) and a concurrent term of six years on count 3 (failure to register as a sex offender). The court also issued a no-contact order requiring Buchanan to "stay away from Jane Doe directly or indirectly." The no-contact order is not reflected in the sentencing minute order or abstract of judgment.
Both parties raise sentencing error claims. Buchanan contends: (1) the no-contact order is unauthorized; (2) the sentence on count 2 must be stayed pursuant to section 654; and (3) the prior serious felony enhancement associated with count 2 must run concurrently to the sentence imposed on count 2. The Attorney General argues consecutive sentences on counts 2 and 3 were mandatory under the Three Strikes Reform Act of 2012 (Proposition 36).
The parties agree the court erred by failing to impose or strike the prior prison term enhancement(s), but disagree on the number of prior prison terms Buchanan suffered. The parties agree the matter must be remanded for the court to exercise its discretion regarding the two prior serious felony enhancements pursuant to Senate Bill No. 1393 (2017-2018 Reg. Sess., Bill 1393).
A. Remand to Comply with Section 136.2***
B. Proposition 36 Does Not Mandate Consecutive Sentences for Counts 1 and 2, but a Consecutive Sentence Must Be Imposed on Count 3
The Attorney General argues "consecutive sentencing was mandatory under Proposition 36." The Attorney General, however, acknowledges People v. Torres (2018) 23 Cal.App.5th 185, 232 Cal.Rptr.3d 614 ( Torres ) has rejected this argument. In Torres , a division of this court held Proposition 36 did not alter the rule that "trial courts have discretion to impose concurrent sentences for multiple serious or violent felonies against a single victim if *392 they were committed on the 'same occasion' or arose from the 'same set of operative facts.' " ( Torres, supra , at p. 197, 232 Cal.Rptr.3d 614, citing People v. Hendrix (1997) 16 Cal.4th 508, 66 Cal.Rptr.2d 431, 941 P.2d 64.) We decline the Attorney General's suggestion to conclude Torres is wrongly decided. We hold the trial court did not abuse its discretion by imposing a concurrent sentence on count 2.
We reach a different conclusion with respect to count 3, failure to register as a sex offender. Where a defendant has "been convicted of a nonserious and/or violent felony, the term imposed for that *808 crime [must be] consecutive to the terms of the serious and/or violent felonies ... regardless of whether those serious and/or violent felonies were committed on 'the same occasion' or arose from 'the same set of operative facts.' " ( Torres, supra , 23 Cal.App.5th at p. 203, 232 Cal.Rptr.3d 614.) Buchanan concedes the "failure to register is a nonviolent/nonserious felony" and, as a result, the trial court should have imposed a consecutive term on that conviction.
We remand for the court to impose a consecutive sentence on count 3.
C.-E.†
DISPOSITION
The judgment of conviction is affirmed. The matter is remanded for resentencing. At resentencing, the court shall: (1) determine the duration of the no-contact order and explain the reasons for that duration in accordance with the factors listed in section 136.2, subdivision (i)(1); (2) impose a consecutive sentence for count 3; (3) order the prior serious felony enhancement (§ 667, subd. (a)(1)) attendant to count 2 to run concurrently to count 1 and consecutively to count 2, unless the court exercises its discretion to strike or dismiss that enhancement pursuant to Bill 1393; and (4) exercise its discretion to impose or strike a single prison prior enhancement (§ 667.5, subd. (b)); and (5) exercise its discretion pursuant to Bill 1393.
Upon resentencing, the court is directed to issue a new abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.
I CONCUR:
Burns, J.

Statutory references are to the Penal Code.

A fish bowl is a 92-ounce mixed drink served in a large bowl. It contains six ounces of alcohol. Doe took prescribed medication for anxiety and depression. The medication did not cause her to hallucinate. Doe did not take the medication on the day of the incident and she did not consume illegal drugs.

See footnote *, ante .

See footnote *, ante .

See footnote *, ante .