Filed 2/13/20

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEMETRIOUS MONTRAIL MARCUS,<br><br>    Defendant and Appellant. | C087059<br><br>(Super. Ct. No. 17FE010993) |

APPEAL from a judgment of the Superior Court of Sacramento County, Allen H. Sumner, Judge. Affirmed with directions.

William W. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Julie A. Hokans, Supervising Deputy Attorney General, Cameron M. Goodman, Deputy Attorney General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, III, and IV.

1

In *People v. Hendrix* (1997) 16 Cal.4th 508 (*Hendrix*), our high court clarified that trial courts had discretion under the statutory scheme then in place to impose concurrent sentences in cases where there are current convictions for more than one violent felony. Of course, this holding did not signal that concurrent sentences were *required*, merely that concurrent sentencing was *available* as a tool trial courts could employ when fashioning an appropriate sentence for the conduct reflected by the various counts of conviction before them at sentencing.

This discretion has been the law for over 20 years.

We agree with the majority of our colleagues who have recently decided this issue that *Hendrix* remains valid in the face of Proposition 36, which passed in November of 2012. Recognizing that our view is not shared by all who have addressed this question, and with respect for opinions that differ from ours, we conclude that Proposition 36 did not function to strip the trial courts of their long-held discretion to fashion an appropriate sentence in cases such as this one. Trial judges retain their discretion to decide how to best fashion an appropriate sentence in cases such as this. We detail our reasoning below in the published portion of our opinion, as it differs slightly from those who have preceded us in reaching this conclusion.

In the unpublished portion of our opinion, we analyze defendant's remaining claims of error and conclude that prejudicial error does not appear, but the case must be remanded for another sentencing issue. Because the trial court mistakenly thought it lacked any discretion to consider concurrent sentencing options, and for other reasons explained herein, we remand for exercise of discretion and resentencing and otherwise affirm.

## INTRODUCTION

Defendant Demetrious Montrail Marcus and an accomplice broke into an apartment occupied by an elderly couple and other family members. After robbing the

victims at gunpoint, defendant and his partner left with various property and were chased by the son and grandson; the son was shot during the chase.

A jury found defendant guilty of two counts of first degree robbery, assault with a firearm, and being a felon in possession of a firearm, and found true several enhancements for personal use of a firearm as well as allegations that defendant had suffered a prior strike, had a prior serious felony conviction, and had served a prior prison term. The trial court sentenced defendant to an aggregate term of 29 years in state prison.

On appeal defendant contends the trial court erred in declining to excuse a juror who expressed concern for the safety of the alleged victims during deliberation, and by failing to recognize it had discretion to impose concurrent sentences for the robbery counts. He also seeks a remand to allow the trial court, under recent statutory amendments, to exercise discretion to strike the prior serious felony enhancement.

We conclude that the trial court misunderstood its discretion to impose concurrent sentences for crimes committed on the same occasion or arising under the same set of operative facts and agree with the parties that a remand is necessary to allow the court to consider striking the prior serious felony enhancement. We also note that the court failed to specify a sentence on count four and direct it to do so on remand, as we explain *post*.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying the counts of conviction are not relevant to the two claims raised on appeal; we decline to recite them in any detail. It suffices to say that defendant was charged with the first degree robbery of a father (Pen. Code, § 211; count one)[1] and his adult son (*ibid.*; count two), assault with a firearm on the grandfather, who was also in the house at the time of the robbery, (§ 245, subd. (a)(2); count three) and being a felon in possession of a firearm (§ 29800, subd. (a)(1), count four).

---

[1] Further undesignated statutory references are to the Penal Code.

3

It was alleged that defendant had a prior strike (§§ 667, subds. (b)-(i), 1170.12), a prior serious felony conviction (§ 667, subd. (a)), and had served a prior prison term (§ 667.5, subd. (b)).

For counts one and two, it was alleged that defendant personally used a firearm. (§ 12022.53, subd. (b).) For count one, it was further alleged that defendant personally discharged a firearm (§ 12022.53, subd. (c)) and caused great bodily injury to the father by shooting him in the shoulder (*id.*, subd. (d)). For count three, it was alleged that defendant personally used a firearm thereby elevating the offense to a serious and violent felony. (§§ 12022.53, subd. (a), 1192.7, subd. (c)(8), 667.5, subd. (c)(8).)

The jury found defendant guilty on all counts, and found that he personally used a firearm for each count (§§ 12022.53, subd. (b), 12022.5, subd. (a)). For count one, the jury found *not* true that defendant discharged a firearm causing great bodily injury. (§ 12022.53, subds. (c)-(d).)[2] In bifurcated proceedings, the jury found the prior strike, prior serious felony, and prior prison term allegations true.

After denying defendant's *Romero*[3] motion, the court sentenced him to an aggregate term of 29 years in state prison. As relevant here, the court imposed a sentence of four years, doubled to eight years due to defendant's prior strike, for the robbery of the father, and a consecutive term of one year four months, doubled to two years eight months, for the robbery of the son; we provide additional detail *post* in our Discussion. The court stayed sentence pursuant to section 654 on count four but did not orally pronounce the sentence. The court also added five years consecutive to the 24-year total of counts one through three and their attendant enhancements for the section 667, subdivision (a), serious felony enhancement.

---

[2] Defendant committed the robberies with an accomplice, and the father testified he could not see which man shot him during the chase that followed the armed robbery.

[3] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

# DISCUSSION

## I

### *Discharge of a Juror*

Defendant contends the trial court erred in refusing to dismiss Juror No. 7 for misconduct during deliberations.  He argues the evidence shows the juror disregarded the court's instruction not to consider sympathy, bias, or punishment in reaching his decision, and instead was improperly sympathetic towards the victims.  Such misconduct, in defendant's view, was presumptively prejudicial, and the People failed to rebut the presumption.  We disagree.

A.  *Background*

Before closing arguments, the court instructed the jury pursuant to CALCRIM No. 200 as follows:  "You must decide what the facts are.  It's up to all of you and you alone to decide what happened based only on the evidence that has been presented to you in this trial.  [¶]  Do not let bias, sympathy, prejudice, or public opinion influence your decision.  Bias includes, but is not limited to, bias for or against the witnesses, attorneys, defendant, or alleged victims, based on gender, nationality, national origin, race or ethnicity, religion, sexual orientation, age, or socioeconomic status.  [¶]  You must reach your verdict without any consideration of punishment.  [¶]  You must follow the law as I explain it to you even if you disagree with it."

After two days of deliberations, the jury submitted Question No. 4, asking in part:  "What instructions do we follow in the case that another juror or jurors cannot follow the instructions given?"  Before responding, the court called the jury foreperson into the courtroom for more information.

According to the foreperson, Juror No. 7 had been reminded not to discuss "[p]otential punishment, safety of people who may have been on the stand testifying, [and the] consequences from any decision that is made either way."  While Juror No. 7

5

acknowledged that he knew he was not supposed to consider such things, he told the other jurors he "can't help but think about" it.

After the foreperson left the courtroom, the trial court called in Juror No. 7 and admonished him not to let bias, sympathy, prejudice, or public opinion influence his decision by rereading CALCRIM No. 200. The court reminded Juror No. 7 that bias included bias for or against the witnesses, attorneys, defendant or alleged victims, and that the jury was required to reach its verdict without considering punishment.

Juror No. 7 responded that he was not discussing punishment but that he was concerned for the safety of the victims depending on what the jury found. While the court acknowledged that it was "human" to have such concerns, the law required that the juror set aside those concerns and base his decision on the facts of the case. When the court asked whether Juror No. 7 was "confident" that he could do that, the juror responded, "I am confident with that, your Honor."

Juror No. 7 then volunteered that he would be willing to "[step] aside" to be replaced by an alternate if the court or the other jurors felt he was not in the "right frame of mind," but that he "[felt] okay" to continue deliberating in light of the court's admonishment. The court responded, "[t]hat's not a basis for removing a juror." The court then gave the example that dismissal would be proper for a juror who was unwilling to follow a law that he disagreed with in the context of a hypothetical marijuana possession case, and Juror No. 7 said: "That would not be the case with myself, your Honor. No sir."

The court then asked Juror No. 7 again: "Are you comfortable, are you confident that you can follow the instruction to not let bias, sympathy, prejudice, considerations of punishment, or any other factor outside the instructions affect your verdict?" Juror No. 7 responded, "I am at this point in time, your Honor. Yes, I am." He was "struggling this morning, but it's better now."

After a sidebar with counsel, the trial court then asked Juror No. 7 whether he was fearful for his own safety or concerned for other parties involved in the case. Juror No. 7 said he was not concerned for his own safety, but that he would "prefer that at the end of this trial that all the violence that has occurred ceases completely." He then again assured the court that he was confident that he could continue deliberating without letting the impermissible factors influence his decision. Before excusing Juror No. 7 to return to the jury room, the court stated: "Now, if you feel that changes as you go along with your deliberations [¶]. . . [¶] will you let us know?" Juror No. 7 assured the court that he would let the court know "immediately" if he continued to have such concerns.

Defense counsel objected to Juror No. 7 remaining on the jury, arguing that his actions showed he was unable to follow the law and was biased in favor of the witnesses and against defendant. The trial court summarized the issue as whether the record showed a demonstrable reality that Juror No. 7 could not follow the law. The court then ruled that the record did *not* show a demonstrable reality that Juror No. 7 was unable to perform the duties of a juror within the meaning of section 1089 (providing for discharge of sitting jurors at any time for inability to perform their duties) or case law. While the court acknowledged that the juror was troubled by the violence discussed at trial and was concerned about the possibility of future violence, the court did not necessarily view the concerns as favoring a verdict for one side or the other. In the court's view, Juror No. 7 may have been concerned for the safety of various people whether defendant was convicted or not, especially in light of testimony that one of the victims was considering resolving the dispute himself in "street fashion." The court further found Juror No. 7 credible when he assured the court that he could now follow the instructions as given and when he agreed he would immediately alert the court if he could not follow CALCRIM No. 200.

The trial court reconvened the jury in the courtroom and told the jurors it wanted to "stress" CALCRIM No. 200 and reread a portion to them. The court then added, "Let

us know if any further instruction would be helpful in moving your deliberations along, if there are specific questions that you'd like answered, if additional argument by counsel on a particular point would be helpful" "if there's anything more you need from us, you can send back another note."

B. *Applicable Law*

"An accused has a constitutional right to a trial by an impartial jury." (*In re Hamilton* (1999) 20 Cal.4th 273, 293 (*Hamilton*); U.S. Const., Amends. VI and XIV; Cal. Const., art. I, § 16.) "An impartial jury is one in which no member has been improperly influenced [citations] and every member is ' "capable and willing to decide the case solely on the evidence before it." ' " (*Hamilton*, at p. 294.)

Under section 1089, a trial court may dismiss a juror and replace him with an alternate if it finds the juror is unable to perform his or her duty. "A deliberating juror's refusal to follow the law set forth in the instructions" constitutes "a failure to perform the juror's duties, and is grounds for discharge." (*People v. Alexander* (2010) 49 Cal.4th 846, 926; *Hamilton, supra*, 20 Cal.4th at p. 305 ["A sitting juror commits misconduct by violating her oath, or by failing to follow the instructions and admonitions given by the trial court"].)

"The trial court's authority to discharge a juror includes the authority to conduct an appropriate investigation concerning whether there is good cause to do so, and the authority to take 'less drastic steps [than discharge] where appropriate to deter any misconduct or misunderstanding it has reason to suspect.' " (*People v. Alexander, supra*, 49 Cal.4th at p. 926; *People v. Lomax* (2010) 49 Cal.4th 530, 588 ["When a court is informed of allegations which, if proven true, would constitute good cause for a juror's removal, a hearing is *required*"].) To avoid intruding unnecessarily upon the sanctity of the jury's deliberations, the court's inquiry into possible grounds for juror discharge should be as limited in scope as possible; the inquiry should focus on the jurors' conduct, not the content of deliberations, and should cease once the court is satisfied the juror at

8

issue is participating in deliberations and has not expressed an intention to disregard the court's instructions or otherwise commit misconduct. (*Alexander*, at pp. 926-927; *People v. Cleveland* (2001) 25 Cal.4th 466, 485.)

The decision of whether or not to replace a juror rests in the trial court's discretion. (*People v. Cleveland, supra*, 25 Cal.4th at pp. 474, 478 [the decision to discharge a juror and to order an alternate juror to serve is in the sound discretion of the trial court].) Although we review a trial court's ruling under section 1089 for abuse of discretion (*People v. Armstrong* (2016) 1 Cal.5th 432, 450), such review involves a " 'heightened standard [that] more fully reflects an appellate court's obligation to protect a defendant's fundamental rights to due process and to a fair trial by an unbiased jury.' " (*Ibid.*) "[T]he juror's 'inability to perform' his or her duty 'must appear in the record as a demonstrable reality.' " (*Ibid.*)

C. *Analysis*

Defendant argues that Juror No. 7 "engaged in misconduct requiring his removal [from] the jury." He challenges the trial court's findings as erroneous. But the court's findings are supported by substantial evidence. As we have described, the court reasonably viewed the foreman's note as indicating that one juror was having difficulty following the court's instructions on the law and had announced that difficulty to the rest of the jurors well before any verdict had been reached. The court recognized that Juror No. 7's misgivings could arguably qualify as improper consideration of bias, sympathy, or punishment in contravention of the court's instruction not to consider those factors in reaching a verdict. After questioning Juror No. 7 and obtaining assurances that he could disregard his safety concerns and decide the case only on the evidence presented during trial, the court found Juror No. 7 credible. That is, the court accepted the juror's representation that he could abide by the court's instruction, and particularly CALCRIM No. 200, which the court reminded Juror No. 7 meant that he could not let bias,

9

sympathy, prejudice, or public opinion influence his decision and he could not consider punishment.

Because the court was able to question Juror No. 7 directly, observing his responses and demeanor in person, we defer to the court's credibility determination. (See *People v. Lomax, supra*, 49 Cal.4th at p. 590; *People v. Fuiava* (2012) 53 Cal.4th 622, 714 [appellate court declined to reassess the weight of the evidence before the trial court where the trial court credited juror's confession that he could not follow the court's instruction because of personal bias in dismissing the juror].) "[T]rial courts are frequently confronted with conflicting evidence on the question whether a deliberating juror has exhibited a disqualifying bias." (*Lomax,* at p. 590.) "In such circumstances, the trial court must weigh the credibility of those testifying and draw upon its own observations of the jurors throughout the proceedings. We defer to factual determinations based on these assessments." (*Ibid.*)

On this record, we cannot say the court abused its discretion in finding that Juror No. 7's inability to discharge his duties did not appear as a demonstrable reality. While he may have *initially* failed to follow CALCRIM No. 200 and confided in the other jurors that he was having difficulty, after his first and only conversation with the court (where it was patiently explained to him that although his humanity was recognized and understood by all, the instruction specifically forbade the considerations he was voicing) the juror indicated that his difficulty had eased. Although defendant stresses the juror's assurance that he could follow the instructions "at this point in time," when read in context, coming as it did only seconds before the juror added that his earlier struggles had *eased*, the temporal reference was just as likely to reference the past than the future, as defendant suggests. The trial court could reasonably conclude after that exchange that discharge was unwarranted given that Juror No. 7 avowed not to let bias, sympathy, or

10

prejudice affect his verdict, and also agreed to inform the court "immediately" if he was unable to do so in the future--assurances the court found credible.[4]

Nor can we say that defendant was prejudiced by Juror No. 7 remaining on the jury. While juror misconduct usually raises a rebuttable presumption of prejudice (*Hamilton, supra*, 20 Cal.4th at p. 296), whether an individual verdict must be overturned for jury misconduct is resolved under the substantial likelihood test--an objective standard. (*Ibid.*) "Any presumption of prejudice is rebutted, and the verdict will not be disturbed, if the entire record in the particular case, including the nature of the misconduct or other event, and the surrounding circumstances, indicates there is no reasonable probability of prejudice, i.e., no *substantial likelihood* that one or more jurors were actually biased against the defendant." (*Ibid.*) Our Supreme Court has recognized that the substantial likelihood test "is a pragmatic one." (*Ibid.*) It is "mindful of the 'day-to-day realities of courtroom life' [citation] and of "society's strong competing interest in the stability of criminal verdicts." (*Ibid.*)

This case is unlike *People v. Echavarria* (2017) 13 Cal.App.5th 1255, upon which defendant relies. There, the court found the People failed to rebut the presumption of prejudice where a juror who claimed to have worked in a prison informed the other jurors during deliberations that while the defendant "could 'walk tomorrow' with time served" if found guilty of second degree murder, that outcome would be far less likely if the verdict were in the first degree. (*Id.* at pp. 1262, 1268-1269.) While one juror cautioned that the jury could not consider information that did not come from the court, not all jurors heard the admonition. (*Id.* at pp. 1262, 1268.)

---

[4] While we recognize that our Supreme Court in *People v. Daniels* (1991) 52 Cal.3d 815 at page 865 observed that a judge *may* reasonably conclude that a juror who has violated instructions to refrain from discussing the case or reading newspaper accounts of the trial cannot be counted on to follow instructions in the future, nothing in the opinion indicates that a trial court is *required* to reach such a conclusion.

The *Echavarria* court noted that the gravity of the misconduct may affect the quantum of proof necessary to rebut the presumption of prejudice. (*People v. Echavarria, supra*, 13 Cal.App.5th at pp. 1266-1267.) To evaluate the seriousness of the misconduct, the court considered whether the extraneous information about sentencing (1) was discussed during the guilt phase of the proceedings; (2) was presented by a person who appeared to have some authority on the subject; (3) was personal to the defendant rather than just conceptual; and (4) whether the discussion was lengthy or brief. (*Id.* at p. 1267.)

Applying those same factors here, it is readily apparent that this case differs markedly from *Echavarria*. Here, Juror No. 7 did not discuss the effect of certain verdicts, but merely pondered the safety of witnesses in the abstract. And unlike the juror in *Echavarria*, here there is no evidence that Juror No. 7 had particular expertise in security or "safety"; he was an electrician. Finally, here Juror No. 7 was warned by the foreperson and then the court that he could not consider anything other than the evidence presented, and the court then admonished the entire jury and read the applicable portion of CALCRIM No. 200.

Juror No. 7 had agreed to "immediately" notify the court if he continued to struggle and never did; further, none of the other jurors complained again that Juror No. 7 was behaving inappropriately. A reasonable inference from this evidence is that after airing his concerns with the court and the court reemphasizing his duty to consider only the evidence presented, Juror No. 7 followed the court's instructions in reaching a verdict.[5]

---

[5] Although defendant argues the other jurors were unlikely to report further instances of misconduct because the trial court never told them to return with any additional concerns, we disagree. By interviewing both the jury foreperson and Juror No. 7, and by admonishing and partially reinstructing the jury, the court made clear to the jurors that following the court's instructions was critical and that such concerns were taken

Any presumption of prejudice arising from Juror No. 7's misconduct is sufficiently rebutted by evidence contained in the record. We therefore reject defendant's juror misconduct claim. We see no substantial likelihood that Juror No. 7 was *actually biased* against defendant.

## II

### *Discretion Regarding Sentencing on the Robbery Counts*

Defendant argues the trial court mistakenly failed to recognize its discretion to impose concurrent terms as to the two robbery counts. We agree.

A. *Background*

At sentencing, the trial court stated its intent to run the sentence for count two, the robbery of the son, concurrent to the sentence for count one, the robbery of the father. The court found that the crimes "arose at the same time," and it observed that a concurrent sentence for count two was "proportionate to the crime itself given the jury's finding that [defendant] was either not the shooter or they were not convinced beyond a reasonable doubt that he was the shooter."

The prosecutor argued that the court lacked discretion to sentence defendant concurrently as to counts one and two because he was found guilty of violent felonies against two victims. The court ultimately agreed.

B. *Analysis*

Defendant was charged under both the legislative version of the three strikes law, section 667, subdivisions (b)-(i), and the initiative version of the three strikes law, section 1170.12. "In many respects, the two statutes are ' "virtually identical." ' " (*People v. Torres* (2018) 23 Cal.App.5th 185, 197 (*Torres*).) " 'Both versions of the statute were substantially revised by Proposition 36, enacted by the voters on November 6,

---

seriously. The court also specifically instructed the jury to let the court know if any further instruction would help deliberations or if it had specific questions they wanted answered. No further questions were submitted.

2012 . . . .' " (*Id*. at p. 197.)  Proposition 36 amended section 1170.12, subdivision (a)(7), which concerns consecutive sentencing for multiple current serious and/or violent crimes, but it did not make corresponding changes to the previously identical statute, section 667, subdivision (c)(7).  (*Torres*, at p. 197.)  The issue raised by defendant's appeal is whether amendments to section 1170.12, subdivision (a)(7) now *require* the trial court to sentence the robbery counts consecutively, thus impliedly repealing well-settled Supreme Court authority.  The trial court concluded that it no longer had discretion after the amendment at issue here.

### 1. *Section 667, subdivisions (c)(6) and (c)(7) and* Hendrix

Before the enactment of Proposition 36, our Supreme Court determined that under section 667, subdivisions (c)(6) and (c)(7), a trial court has discretion to impose concurrent sentences in cases where there are current convictions for more than one serious and/or violent felony committed on the same occasion and arising from the same set of operative facts.  (*Hendrix, supra,* 16 Cal.4th at pp. 511-512.)

Section 667, subdivision (c)(6) provides:  "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)."  By its plain language, subdivision (c)(6) requires consecutive sentences for *any* felony convictions not committed on the same occasion and not arising from the same set of operative facts.  (*Hendrix*, *supra*, 16 Cal.4th at p. 512.)  Our high court in *Hendrix* further concluded that "By implication, consecutive sentences are *not* mandatory under subdivision (c)(6) if the multiple current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.' "[6]  (*Id*. at pp. 512-513, italics added.)

---

[6] We are bound by our Supreme Court's interpretation of the language in the statute.  (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["all tribunals

The court in *Hendrix* then analyzed section 667, subdivision (c)(7) which provides: "If there is a current conviction for more than one serious or violent felony as described in paragraph (6), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law." The court observed subdivision (c)(7) "applies when there is more than one current serious or violent felony." (*Hendrix, supra*, 16 Cal.4th at p. 513.) Since "[t]he most logical meaning of the reference to 'paragraph (6)' in subdivision (c)(7) is that it refers to subdivision (c)(6)," the court concluded, " 'more than one serious or violent felony as described in paragraph (6)' refers to multiple current convictions for serious or violent felonies 'not committed on the same occasion, and not arising from the same set of operative facts.' " (*Ibid.*) "Thus, when a defendant is convicted of two or more current serious or violent felonies 'not committed on the same occasion, and not arising from the same set of operative facts,' not only must the court impose the sentences for these serious or violent offenses consecutive to each other, it must also impose these sentences 'consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law.' By implication, consecutive sentences are not mandated under subdivision (c)(7) if all of the serious or violent current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.' " (*Ibid.*)

The court explained why subdivisions (c)(6) and (c)(7) of section 667 are not duplicative. "Subdivision (c)(6) mandates consecutive sentencing for *any* current felony not committed on the same occasion, and not arising from the same set of operative facts. Consecutive sentencing is not mandated under subdivision (c)(6) if the current felonies

exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction"].)

15

are committed on the same occasion or arise from the same set of operative facts." (*Hendrix, supra*, 16 Cal.4th at p. 513.) Under subdivision (c)(7), any two serious or violent felonies not committed on the same occasion and not arising from the same set of operative facts must be sentenced consecutive to each other--consistent with the requirements of (c)(6)--and " 'consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law.' " (*Hendrix,* at pp. 513-514.) At the time *Hendrix* was decided, both subdivision (c)(7) and section 1170.12, subdivision (a)(7) only applied when the serious and violent felonies had occurred on separate occasions such that consecutive sentences were required by subdivision (c)(6) and section 1170.12, subdivision (a)(6). As we will discuss below, the passage of Proposition 36 expanded the circumstances in which section 1170.12, subdivision (a)(7) applies.

Since our Supreme Court decided *Hendrix* in 1997, trial judges have retained discretion to sentence multiple current convictions for serious and/or violent felonies concurrently where those crimes arose out of the same set of operative facts and were committed on the same occasion. Proposition 36 did not amend the language of subdivisions (c)(6) or (c)(7) of section 667.

### 2. *Section 1170.12, subdivisions (a)(6) and (a)(7) and Proposition 36*

Proposition 36 did, however, make changes to the parallel, initiative version of the statutory sentencing scheme. The amendments made the following changes to the language of section 1170.12, subdivision (a)(7), which we set out here along with subdivision (a)(6), for context:

"(a) Notwithstanding any other provision of law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more *prior serious and/or violent* felony convictions, as defined in subdivision (b), the court shall adhere to each of the following:

[¶] . . . [¶]

16

(6) If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to this section.  [¶]
(7) If there is a current conviction for more than one serious or violent felony as described in ~~paragraph (6) of this~~ subdivision **(b)**, the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law."[7]
(§ 1170.12, subd. (a)(6) & (7), as amended by Prop. 36, § 4, eff. Nov. 7, 2012, boldface, italics, and strike out added.)

Few published cases have examined how Proposition 36's amendment to section 1170.12 affected the trial court's discretion to impose concurrent sentences for serious and/or violent felonies committed on the same occasion and arising from the same set of operative facts.  In *Torres, supra*, 23 Cal.App.5th at pages 196 through 203, Division One of the First District Court of Appeal held that such discretion remains.  A majority of a panel of our colleagues recently agreed with the result in *Torres* while following a slightly different analytical path in *People v. Gangl* (2019) 42 Cal.App.5th 58, petition for review pending, petition filed December 17, 2019, S259463 (time for grant or denial of review extended to March 16, 2020).  Division Five of the First Appellate District followed *Torres* in *People v. Buchanan* (2019) 39 Cal.App.5th 385.  We, too, reach the same conclusion as the *Torres* court, but with different emphases in our analysis, as we now explain.

       3. *The Effect of Proposition 36 on the Language Interpreted by* Hendrix

As we have described, *Hendrix* interpreted section 667, subdivision (c)(6) to allow the trial courts discretion to choose consecutive or concurrent sentences under certain

---

[7] Section 1170.12, subdivision (b) defines "serious and/or violent" felony for purposes of the three strikes law.

17

circumstances.  The parallel provision to subdivision (c)(6), containing identical language in all relevant respects, is contained in section 1170.12, subdivision (a)(6).  Proposition 36 did not amend section 1170.12, subdivision (a)(6), and therefore, as held by *Hendrix* in its analysis of the parallel provision--subsection (c)(6) of section 667--subdivision (a)(6) continues to apply to *all* felonies, including serious and violent felonies.[8]  (See *Torres*, *supra*, 23 Cal.App.5th at p. 200.)  Accordingly, subdivision (a)(6) requires consecutive sentences for multiple felonies not committed on the same occasion or arising out of the same set of operative facts, whether or not the felonies are serious and/or violent.  (*Ibid.*)  And as our high court held in *Hendrix* when analyzing identical language to that contained in subdivision (a)(6), that subdivision continues to authorize trial courts to sentence multiple current felony convictions concurrently if those felonies

---

[8]  Although others have assumed the intent to amend both parallel provisions and that the failure to do so was inadvertent (*Torres, supra,* 23 Cal.App.5th at p. 202; *People v. Buchanan, supra,* 39 Cal.App.5th at p. 395, fn. 2 (conc. & dis. opn. of Needham, J.)), we do not.  In our view, given the fact that Proposition 36 *did* make *other* changes to section 667, which include the multiple additions of references to subdivision (b) such as the change seen here, the failure to make changes to the parallel subdivision of section 667 signals that the amendment to section 1170.12, subdivision (a)(7) was perhaps *itself* unintentional.  Indeed, although the parties did not brief this issue, we suspect the change to the initiative version of the statute at issue here may be a drafter's error.  We construe the language of a statute or initiative by reconciling and harmonizing its parts, both internally and by considering its interaction with the larger body of connected laws.  (See *People v. Pieters* (1991) 52 Cal.3d 894, 898-899; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)  "We recognize the basic principle of statutory and constitutional construction which mandates that courts, in construing a measure, not undertake to rewrite its unambiguous language.  [Citation.]  That rule is not applied, however, when it appears clear that a word has been erroneously used, and a judicial correction will best carry out the intent of the adopting body."  (*People v. Skinner* (1985) 39 Cal.3d 765, 775.)  In some cases the text and purpose of a measure reveal a drafting error.  (*Id.* at pp. 775-776.)  Although we do not base our holding on this observation, this may indeed be one of those cases.

18

were committed on the same occasion and arose out of the same set of operative facts, whether or not the current felony convictions are serious and/or violent. (*Ibid.*)

Proposition 36's amendment to subdivision (a)(7) eliminated that subdivision's reference to (a)(6) and replaced it with a reference to "subdivision (b)," which contains a definition of "serious and violent felonies." Therefore, subdivision (a)(7) no longer applies only to "serious or violent felonies 'not committed on the same occasion, and not arising from the same set of operative facts.' " (*Hendrix*, *supra*, 16 Cal.4th at p. 513.) Rather, subdivision (a)(7) applies in all cases where the current multiple felonies are serious and/or violent--even when those felonies were committed at the same time and involve the same facts.

But as we have described *ante*, *Hendrix* teaches through its analysis of the parallel provisions of section 667 that subdivision (a)(7) is not duplicative of (a)(6). Section 1170.12, subdivision (a)(7) only *adds* that *other crimes* must be sentenced consecutively to the serious and/or violent felonies sentenced either consecutively or concurrently under subdivision (a)(6).[9] Subdivision (a)(7) does not, by its plain language, require the serious/violent felonies to be sentenced consecutively to *one another*. Instead, (a)(7) commands only that the sentence for each serious and violent felony shall be imposed "consecutive *to the sentence for any other conviction* for which the defendant may be consecutively sentenced in the manner prescribed by law." (§ 1170.12, subd. (a)(7),

---

[9] The court in *Torres* described Proposition 36 as changing the "triggering" language of subdivision (a)(7) because the subdivision now applies whenever there are multiple serious and/or violent felonies, rather than only where there are multiple serious and/or violent felonies not occurring on the same occasion and not arising from the same set of operative facts. (*Torres*, *supra*, 23 Cal.App.5th at p. 201.) But, according to *Torres*, Proposition 36 did not change the "directive" portion of subdivision (a)(7), meaning that (a)(7) continues to only add that crimes other than the serious and/or violent crimes sentenced either consecutively or concurrently under subdivision (a)(6) must be sentenced consecutively under subdivision (a)(7). (*Ibid.*)

19

emphasis added.)  Subdivision (a)(7) requires the sentences for multiple serious and violent felonies to run consecutive to the sentences for other convictions that may be imposed consecutively.  This requirement does not, however, supplant the discretion to sentence serious and violent felonies concurrently that is bestowed by subdivision (a)(6).

By way of example, consider a hypothetical scenario in which a defendant is convicted of two serious and/or violent felonies committed on the same occasion and arising under the same set of operative facts and multiple other nonserious and nonviolent felonies.  Because the serious and/or violent felonies were committed on the same occasion and arose under the same set of operative facts, section 1170.12, subdivision (a)(6)--which applies to *any* felonies--confers on the sentencing court the discretion to sentence those serious and/or violent felonies concurrently.  But following Proposition 36, subdivision (a)(7) now applies *whether or not* those serious and/or violent felonies were committed on the same occasion and arose under the same set of operative facts.  And because subdivision (a)(7) only adds to subdivision (a)(6) that "any *other* conviction" must be sentenced consecutively, subdivision (a)(7) now requires that the sentencing court sentence each of the nonserious/nonviolent felonies consecutively to the serious and/or violent felonies.

Our dissenting colleague incorporates by reference his dissent in *People v. Gangl, supra*, 42 Cal.App.5th at page 72, wherein he concluded that by deleting the prior reference in section 1170.12, subdivision (a)(7) to "paragraph (6)" and inserting in its place "subdivision (b)," the electorate sought to create two separate consecutive sentencing provisions--one for multiple serious and/or violent felonies (subdivision (a)(7)) and one for multiple felonies including no more than one serious and/or violent felony (subdivision (a)(6)).  (*Gangl*, at pp.74-75 (conc. & dis. opn. of Krause, J.).)

We do not agree that removing the reference to subdivision (a)(6) from subdivision (a)(7) effectively removed sentencing for multiple serious and/or violent felonies from subdivision (a)(6).  Rules of statutory construction obligate us to read a

20

statute, and its various subdivisions, as a cohesive whole. (See *In re Catalano* (1981) 29 Cal.3d 1, 10-11 [court should not read each subdivision in isolation; rather, it must apply the general principle of statutory construction that statutes are to be read in order to harmonize the statutory scheme].) Because subdivision (a)(6) continues to apply to *all* felonies, as interpreted by our Supreme Court in *Hendrix*, current convictions for multiple serious and violent felonies must still be sentenced pursuant to subdivision (a)(6) prior to any consideration of subdivision (a)(7). Therefore, although subdivision (a)(7) no longer specifically refers to subdivision (a)(6), we conclude subdivision (a)(7) as construed by the dissent is contradictory to subdivision (a)(6).

Proposition 36 neither refers to *Hendrix* nor states its express intent to overrule longstanding Supreme Court precedent. As we have explained, its amendments do not add the language to section 1170.12, subdivision (a)(6) that would be necessary to overrule any part of this precedent. Had the voters disagreed with *Hendrix*'s conclusion and intended to reject its holding that subdivision (a)(6) applies to all felonies, the voters could have easily amended subdivision (a)(6) to explicitly refer only to nonserious and nonviolent felonies. This would effectively create two classes of crimes to which two different sentencing rules would apply: (1) nonviolent/nonserious felonies covered by subdivision (a)(6); and (2) serious/violent felonies covered exclusively by subdivision (a)(7). The voters did not do so.

5. *Conclusion*

Thus we join our colleagues in this district and the First Appellate District and conclude the trial court mistakenly opined it had lost discretion under the three strikes law to impose concurrent sentences on the robbery counts in the wake of Proposition 36.[10] We vacate the sentence and remand for a new sentencing hearing. Because there

---

[10] At sentencing, the trial court found the robbery counts "arose at the same time."

are multiple counts and discretionary decisions at play, the trial court may consider the entire sentencing scheme and reconsider all sentencing choices. (See *People v. Hill* (1986) 185 Cal.App.3d 831, 834.)

III

*Prior Serious Felony Enhancement*

The Governor signed Senate Bill No. 1393 which, effective January 1, 2019, amends sections 667, subdivision (a) and 1385, subdivision (b) to allow a trial court to exercise its discretion to strike or dismiss a prior serious felony allegation for sentencing purposes. (Stats. 2018, ch. 1013, §§ 1-2.) Under the pre-2019 versions of these statutes, the court was required to impose a five-year consecutive term for "any person convicted of a serious felony who previously has been convicted of a serious felony" (former § 667, subd. (a)), and the court had no discretion "to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667" (former § 1385, subd. (b)).

Defendant contends Senate Bill No. 1393 applies retroactively to his case. The People properly concede the matter. The statutory changes of Senate Bill No. 1393 apply retroactively to any case that is not final on January 1, 2019, under the rule of *In re Estrada* (1965) 63 Cal.2d 740. "The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*People v. Conley* (2016) 63 Cal.4th 646, 657.)

The same inference of retroactivity applies when an amendment ameliorates the possible punishment. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 308.) When a statutory amendment " 'vests in the trial court discretion to impose either the same penalty as under the former law or a lesser penalty,' " there is "an inference that the Legislature intended retroactive application 'because the Legislature has determined that

22

the former penalty provisions may have been too severe in some cases and that the sentencing judge should be given wider latitude in tailoring the sentence to fit the particular circumstances.' " (*Ibid.*, quoting *People v. Francis* (1969) 71 Cal.2d 66, 76.)

Under the *Estrada* rule, as applied in *Francis* and *Lara*, we infer as a matter of statutory construction the Legislature intended Senate Bill No. 1393 to apply to all cases not yet final on January 1, 2019. (*People v. Garcia* (2018) 28 Cal.App.5th 961, 973.) Accordingly, we remand the matter to the trial court to determine whether to exercise its discretion to strike the five-year prior serious felony enhancement.

IV

*Section 654*

We note that the trial court did not identify the sentence imposed for count four before staying the term under section 654. Although the court previously stated that it intended, with limited exceptions not relevant here, that the sentence should be the same as recommended by probation for count four, the probation report recommended the court impose one-third the midterm of eight months, doubled to 16 months for the strike prior, and then stay the sentence under section 654. This recommendation is erroneous and to follow it would result in an unauthorized sentence. "The one-third-the-midterm rule of section 1170.1, subdivision (a), only applies to a consecutive sentence, not to a sentence stayed under section 654." (*People v. Cantrell* (2009) 175 Cal.App.4th 1161, 1164.) When a sentence is required to be stayed under section 654, the trial court should impose a full-term sentence to ensure the "defendant's punishment is commensurate with his criminal liability" in the event that the stay is lifted. (*Ibid.*)

Because we are remanding in any event for exercise of discretion, we direct the trial court to impose and stay a full term sentence on count four.

# DISPOSITION

Defendant's convictions are affirmed. The matter is remanded for a new sentencing hearing consistent with this opinion. Upon resentencing, the clerk is directed to send a certified copy of the new abstract of judgment to the Department of Corrections and Rehabilitation.

/s/
Duarte, Acting P. J.

I concur:

/s/
Renner, J.

Krause, J., Concurring and Dissenting.

I concur in the majority opinion except for part II of the Discussion.  To that part, I dissent for the reasons articulated in my dissenting opinion in *People v. Gangl* (2019) 42 Cal.App.5th 58 (conc. & dis. opn. of Krause, J.) (petn. for review pending, petn. filed Dec. 17, 2019, S259463).


                                        _____/s/_____
                                        Krause, J.


1