Filed 3/22/22  P. v. Ramos CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HECTOR MANUEL RAMOS,<br><br>    Defendant and Appellant. | 2d Crim. No. B317222<br>(Super. Ct. No. CRF59472)<br>(Tuolumne County) |

Hector Manuel Ramos appeals from the judgment entered after a jury convicted him of conspiracy to furnish a controlled substance (methamphetamine) to a person confined in prison. (Pen. Code, §§ 182, subd. (a)(1), 4573.9, subd. (a).)[1]  He was convicted in Tuolumne County Superior Court, and the appeal was pending in the Fifth Appellate District.  By an order filed on December 20, 2021, the Supreme Court transferred the appeal to this court.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

When he committed the present offense, appellant was confined in prison on a prior 2018 conviction of possession for sale of a controlled substance (the prior 2018 conviction). The trial court found true a 1992 residential burglary strike within the meaning of California's "Three Strikes" law. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) It sentenced appellant to the upper term of six years, doubled to twelve years because of the strike. It ordered that the sentence be served consecutively to the prison sentence for the prior 2018 conviction.

Appellant contends: (1) as a matter of law, he could not be convicted of the present offense; (2) the trial court erred in reading to the jury the charged offense as stated in the information; (3) the court committed reversible error by instructing the jury on the inapplicable theory of aiding and abetting; (4) the evidence is insufficient to support the conviction; (5) the court abused its discretion in denying his motion to dismiss the strike; (6) the court failed to exercise its discretion in selecting the six-year upper term; (7) if the court exercised discretion, it abused its discretion in not imposing the lower or middle term; (8) he was denied his constitutional right to effective assistance of counsel; and (9) the court failed to exercise discretion whether to run the 12-year prison sentence for the present offense consecutively to or concurrently with the prison sentence for the prior 2018 conviction.

Only the ninth contention has merit. We remand the matter to the trial court with directions to exercise its discretion whether to run the 12-year prison sentence for the present offense concurrently with or consecutively to the prison sentence for the prior 2018 conviction. In all other respects, we affirm.

2

*Facts*

Bryce Klein is a correctional officer at the Sierra Conservation Center, where appellant was incarcerated on the prior 2018 conviction. Klein learned that a greeting card mailed to another inmate, Anthony Camacho, had been intercepted by prison officials on September 21, 2018. The card tested positive for methamphetamine. Camacho and appellant resided in dorm 15, which contained 32 beds.

The card's envelope had a fictitious return address showing that it had been mailed by Letty Hernandez who lived in La Puente. Camacho had no connection to La Puente. Four other persons in dorm 15 had a connection to that area. One of the persons was appellant. He had a girlfriend, Destiny Magallon, who lived there. While in prison, appellant had made phone calls to Magallon in La Puente. He was the only one of the four persons in dorm 15 who had made telephone calls to the area "that were relevant to [Officer Klein's] investigation."

Camacho's incoming mail was diverted to Officer Klein. On November 20, 2018, Klein received a second greeting card addressed to Camacho. It tested positive for methamphetamine. The card's envelope had a fictitious return address showing that it had been mailed by Rosa Lopez who lived in La Puente. The return addresses on the envelopes for both cards were about a mile away from where Magallon lived. Both envelopes bore a Santa Ana postmark.

Officer Klein testified: Inmates refer to methamphetamine-soaked cards as "'happy cards.'" "Patterns is another [term] that is used" because "when the drug is soaked onto the paper, it will create a certain pattern." Such cards are "normally cut up into approximately half[-]inch squares and then

3

sold to the inmate population."  An inmate consumes the methamphetamine by sucking or smoking the card, and there "is a process where it can be boiled out."

Officer Klein continued:  When a "happy card" is going to be sent to an inmate through the mail, the inmate "will usually talk to a friend or associate" in prison and "use that individual's name [as the addressee], so if [the drug is] detected [by prison officials and] we look into the [associate's] name, there is no connection back to the original person.  And it is just an open investigation with nowhere to go."  The person mailing the card will put "[a] fictitious name and [return] address" on the envelope to "protect . . . the sender from getting caught."

The jury listened to recordings of telephone conversations between Magallon and appellant while he was in prison.  On August 31, 2018, appellant said, "You need to . . . stop putting that word . . . happy cards in there."  On September 9, 2018, 12 days before prison officials intercepted the first card, appellant asked if Magallon had received his letter "[a]bout those patterns." Magallon replied, "No."  Appellant asked her if she "could send two patterns."  Magallon answered, "Yeah."  Appellant continued, "I shot you an address of somebody in my dorm if you could do it fast."

On September 24, 2018, three days after the interception of the first card, Magallon told appellant, "I sent that one card you told me to send to your Bunkie . . . .  But I sent one, I'm gonna send you another card today but it's just a regular card from me." Officer Klein explained that "regular card" means "[a] standard greeting card" without drugs on it.  "Bunkie" refers to a fellow inmate "[l]iving within the same dorm, usually."

4

On September 27, 2018, appellant complained to Magallon that he had not received "the patterns you sent."  On October 5, 2018, appellant asked, "Hey, did you send those, those patterns? . . . The patterns I had asked you[?]"  Magallon replied, "Yeah, I told you I did. . . .  I sent them along the first time I sent you your card."  Appellant responded, "Yeah, nothing ever happened, like nothing ever came through."  At the end of the conversation, appellant said, "Send the pattern in homeboy[']s name."

### Appellant Could Lawfully Be Convicted of Conspiracy to Commit a Violation of Section 4573.9

"The necessary elements of a criminal conspiracy are: (1) an agreement between two or more persons; (2) with the specific intent to agree to commit a public offense; (3) with the further specific intent to commit that offense; and (4) an overt act committed by one or more of the parties for the purpose of accomplishing the object of the agreement or conspiracy." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1128 (*Liu*).)  Appellant was convicted of conspiracy to violate section 4573.9, i.e., conspiracy to furnish a controlled substance to a prison inmate.  (§§ 182, subd. (a)(1), 4573.9.)  Appellant contends that, as a matter of law, he could not lawfully be convicted of this offense because (1) the alleged conspiracy involved only himself and Magallon, and (2) he was the prison inmate to whom the controlled substance was intended to be furnished.

Section 4573.9, subdivision (a) provides that "any person, *other than a person held in custody*," is guilty of violating this section if he furnishes a controlled substance "to any person held in custody in any state prison."  (Italics added.)  Because appellant was in custody, he could not be convicted of violating

5

section 4573.9. But in appropriate circumstances he could be convicted of conspiracy to violate section 4573.9. "Although the increased penalty for the substantive offense of in-prison sale, etc., of controlled substances is restricted to noninmates, nothing in the legislative history of section 4573.9 or in the overall statutory scheme suggests the Legislature intended to exempt from this increased penalty those inmates who actively join with noninmates in a criminal conspiracy to introduce controlled substances into prison. To hold otherwise would lead to the absurd result of an incarcerated drug kingpin, using noninmate 'mules' to smuggle into prison contraband that is then sold to other inmates in a profit-making business enterprise, and yet [the kingpin would] escap[e] the increased penalties to which the 'mules,' who operate at his or her direction, are subject." (*People v. Lee* (2006) 136 Cal.App.4th 522, 537-538 (*Lee*).)

Appellant maintains that, unlike the drug kingpin in the above example, he could not be convicted of conspiracy to violate section 4573.9 because he and Magallon "were not working with anyone else, and they did not intend to distribute drugs to other inmates." "There is no significant distinction, therefore, between appellant and the person who buys drugs on the street. . . . The fact that the drugs, in this case, enter a penal institution, is a distinction without a difference." "The transaction between appellant and [Magallon] constituted a buyer-seller relationship rather than a conspiracy." "Appellant was unlawfully convicted of conspiracy to furnish drugs to himself . . . ."

Appellant relies on the following federal court rule: "A conspiracy is not merely an agreement. It is an agreement with a particular kind of object—an agreement to commit a crime. When the sale of some commodity, such as illegal drugs, is the

6

substantive crime, the sale agreement itself cannot be the conspiracy, for it has no separate criminal object. What is required for conspiracy in such a case is an agreement to commit some other crime beyond the crime constituted by the [sale] agreement itself." (*United States v. Lechuga* (7th Cir. 1993) 994 F.2d 346, 349 (*Lechuga*).) "In *Lechuga*, the court found that as long as the defendants were individually on opposite sides of the sale—one was buying alone and one was selling alone—they could not have conspired together to distribute cocaine. *Lechuga* stands for the proposition that mere evidence of one sale of narcotics, without more, is inadequate to support a conviction of the buyer and seller for conspiracy to distribute narcotics." (*United States v. Herrera* (7th Cir. 1995) 54 F.3d 348, 353.) "Were the rule otherwise, every narcotic sale would constitute a conspiracy." (*United States v. Lennick* (9th Cir. 1994) 18 F.3d 814, 819.)

The *Lechuga* rule does not shield appellant from liability for conspiracy to violate section 4573.9. The rule does not apply where a third party is involved. It is reasonable to infer that appellant and Magallon agreed to furnish methamphetamine to a third-party – appellant's bunkmate, Camacho – with the understanding that Camacho would turn the drugs over to appellant. Moreover, insofar as the agreement involved Camacho, it was in effect "an agreement to commit some other crime [i.e., furnishing methamphetamine to Camacho through the mail,] beyond the crime constituted by the agreement itself [i.e., furnishing methamphetamine to appellant]." (*Lechuga*, *supra*, 994 F.2d at p. 349.)

7

*Court's Reading of Information to Jury*

The criminal complaint against appellant was deemed to be an information. Immediately prior to voir dire, the trial court read to the jury the charge as stated in the information. The court said, "[T]he complaint alleges that . . . [appellant] and a woman named Destiny Magallon . . . did unlawfully conspire together with another person and persons whose identity is unknown to commit the crime of furnishing controlled substances to a person in custody in prison." Appellant did not object. He argues, "The trial court misrepresented the charge alleged against appellant and inadvertently created the misperception that appellant and [Magallon] were part of a broader conspiracy to furnish drugs to a person, or people, in custody in state prison."

The trial court did not misrepresent the charge. It merely read the charge as stated in the information. Moreover, appellant's argument is forfeited because he failed to object in the trial court. (See *People v. Wader* (1993) 5 Cal.4th 610, 646 [by not objecting, defendant forfeited claim that the trial court had erroneously read information to the jury; "[i]n any event, the reading of the information could not have influenced the jury, and was therefore harmless under any standard"].)

*Aiding and Abetting Instruction*

Although appellant was charged with conspiracy, the trial court instructed the jury on both conspiracy and aiding and abetting. Appellant claims that the trial court committed reversible error in instructing on the inapplicable theory of aiding and abetting. "Giving an instruction that is correct as to the law but irrelevant or inapplicable is error. [Citation.] Nonetheless, giving an irrelevant or inapplicable instruction is generally '"only

8

a technical error which does not constitute ground for reversal."'" (*People v. Cross* (2008) 45 Cal.4th 58, 67.)

"[W]hen one of the theories presented to a jury is factually inadequate, such as a theory that, while legally correct, has no application to the facts of the case, we . . . will affirm 'unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory.'" (*People v. Perez* (2005) 35 Cal.4th 1219, 1233.) There is no reasonable probability that, based solely on an aiding and abetting theory, the jury found appellant guilty of conspiracy to commit a violation of section 4573.9. We assume that the jury disregarded the instruction on aiding and abetting. The jury was instructed: "Some of these instructions may not apply, depending on your findings about the facts of the case. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

*Sufficiency of the Evidence*

Useable Amount of Methamphetamine

Appellant contends that the evidence is insufficient to prove an element of the conspiracy conviction – the card mailed by Magallon contained a usable amount of methamphetamine. The jury was instructed that, to constitute a violation of section 4573.9, the furnished controlled substance must be a usable amount. (See *ante*, at pp. 7-8, fn. 2.) But appellant was not convicted of violating section 4573.9. He was convicted of conspiracy to violate the statute. The jury was instructed that, for appellant to be guilty of conspiracy, it must find that he "intended to agree and did agree with [Magallon] to commit the crime of a non-confined person furnishing a controlled substance

9

to a confined person." In other words, appellant must have intended to furnish a usable amount of methamphetamine. The People were not required to prove that Magallon actually furnished a useable amount. Appellant acknowledges that "'[c]ompletion of the crime of conspiracy does not require that the object of the conspiracy be accomplished, or even that it be possible to accomplish it.'" (See *Liu, supra,* 46 Cal.App.4th at pp. 1130-1131.)

We "'must review the whole record in the light most favorable to the judgment below to determine whether it discloses *substantial evidence*—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Cuevas* (1995) 12 Cal.4th 252, 260-261.) "'[W]e presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.'" (*People v. Wilson* (2008) 44 Cal.4th 758, 806.)

The jury was instructed: "A *usable amount* is a quantity that is enough to be used by someone as a controlled substance. Useless traces or debris are not useable amounts. On the other hand, a usable amount does not have to be enough, in either amount or strength, to affect the user."

Substantial evidence supports the jury's finding that appellant intended to agree with Magallon, and did agree, to furnish a usable amount of methamphetamine. A criminalist testified that the cards mailed to Camacho contained methamphetamine. Officer Klein opined without objection that the two cards contained usable amounts of methamphetamine. The mailing of the cards would have been pointless had appellant

10

and Magallon not intended to furnish a usable amount of methamphetamine.

Conspiracy to Furnish Controlled Substance to Inmate

Appellant maintains that "[t]he evidence . . . was insufficient to find, beyond a reasonable doubt, that [he] entered into a conspiracy with [Magallon] to furnish drugs to a person in custody in prison."  Appellant claims that "there was no reliable evidence that [his] use of the word 'pattern' referred to a card soaked in methamphetamine."  But Officer Klein testified that the word is used by inmates to refer to such a card because "when the drug is soaked onto the paper, it will create a certain pattern."

Appellant argues that "[he] gave [Magallon] the address 'of somebody in [his] dorm,' but there was no direct evidence that it was Anthony Camacho's address that he gave her, or that the cards addressed to Camacho came from [Magallon]."  The lack of direct evidence does not detract from the sufficiency of the evidence.  "[S]ubstantial evidence includes circumstantial evidence and the reasonable inferences the evidence allows." (*People v. Tabb* (2009) 170 Cal.App.4th 1142, 1152.) "Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt."  (*People v. Pierce* (1979) 24 Cal.3d 199, 210.) Here, ample circumstantial evidence connects appellant with the crime of conspiracy to furnish a controlled substance to an inmate.  The evidence consists of the methamphetamine-soaked cards mailed to Camacho, the telephone conversations between appellant and Magallon, and Officer Klein's testimony.  The circumstantial evidence is sufficient to prove appellant's guilt beyond a reasonable doubt.

11

*Denial of Motion to Dismiss Prior Strike*

Appellant asserts that the trial court abused its discretion in denying his *Romero* motion to dismiss the prior 1992 residential burglary strike. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.) The motion alleged: "[Appellant] is now 53 years old. He was 26 years old when he suffered the strike conviction . . . ." "[His] record since the 1992 strike[] involves only drug and driving offenses. No convictions for violence appear based upon the probation report." He "appears to be a life long addict." The court's ruling was brief: "All right. Based on . . . the long criminal history of this defendant, I don't see any basis for taking this outside the scope of the normal three-strikes scheme; so the motion is denied."

A "court's [refusal] to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) In *People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*), our Supreme Court declared that, in exercising its discretion, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the . . . spirit [of the Three Strikes scheme], . . . and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (Accord, *People v. Garcia* (1999) 20 Cal.4th 490, 503.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra,* at pp. 376–377.)

12

<u>Trial Court's Refusal to Consider Medical Evidence</u>

Appellant argues that the trial court abused its discretion in "refus[ing] to consider . . . medical evidence that [he] offered." At the hearing on the motion to dismiss the strike, appellant's counsel told the court that his client had "brought some medical documentation." Appellant explained, "I was diagnosed with Hep C, cirrhosis of the liver. They found a tumor on my liver so I need some kind of medical – or something done on me." The court asked, "What does that have to do with the *Romero* motion?" Counsel responded, "In talking to the doctors, I don't think they were too hopeful, but I just add that in for what it's worth to the court." The court inquired, "[I]s that a factor the Court can consider in a *Romero* motion?" Counsel replied: "I'm not sure, I just got this information just seconds ago, so I just wanted to, out of an abundance of caution, just let the Court know." The court said, "I don't think that's something the Court can consider with regard to the *Romero* motion. Unless somebody can give me some authority to the contrary, I don't feel I can, so I'm going to base any ruling I do on the papers that have been filed." Appellant did not object.

The trial court did not abuse its discretion in refusing to consider evidence of appellant's medical condition on the ground that it was irrelevant to the *Romero* motion. "No evidence is admissible except relevant evidence." (Evid. Code, § 350.) "It is the burden of the proponent of evidence to establish its relevance . . . . (Evid. Code, § 354.)" (*People v. Schmies* (1996) 44 Cal.App.4th 38, 51.) Appellant did not carry his burden of establishing the relevance of his medical condition to the issue in question, i.e., whether he "may be deemed outside

the . . . spirit [of the Three Strikes scheme], . . . and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.)

### Trial Court's Alleged Failure to
### Consider Relevant Factors

Appellant contends that the trial court abused its discretion because it failed to adequately consider his "underlying addiction." His "convictions are a symptom of his substance use disorder." Furthermore, the trial court did not consider that "[a]ppellant's . . . strike was 27 years old and pertained to a burglary that occurred in 1991." The burglary conviction "was so *de minimis* that appellant was sentenced to the low-term of two years . . . ." In addition, "the nature and circumstances of the current felony were as inoffensive as a felony could be. . . . [H]e was convicted of asking his girlfriend for drugs over a recorded phone line."

The trial court did not exceed the bounds of reason in concluding that appellant did not fall "outside the . . . spirit [of the Three Strikes scheme]." (*Williams, supra*, 17 Cal.4th at p. 161.) According to the probation report, he has an extensive criminal record. He was convicted of drug offenses in 1984, 1985, 1986, 1988, 1990, and 1991. He violated probation in 1984. In 1990 he was convicted of taking a vehicle without the owner's consent. (Veh. Code, § 10851, subd. (a).) He was placed on probation on condition that he serve one year in county jail. He violated probation and was sentenced to two years in prison. After his release from prison on the 1992 residential burglary strike, he twice violated parole in 1994. In 1995 he was convicted of possession for sale of a controlled substance (Health & Saf.

14

Code, § 11378.5) and was sentenced to prison for six years. In 1996 he was convicted of unauthorized possession of drugs in prison and was sentenced to prison for 16 months. He was convicted of drug offenses in 2003, 2005, 2014, and 2016. In 2006 he violated parole, and in 2014 he violated probation. In 2018 he was convicted of possession for sale (Health & Saf. Code, § 11378) and was sentenced to prison for 32 months. He committed the present offense while in prison for the prior 2018 conviction.

The prior strike was 27 years old at the time of sentencing on the present offense. But "[w]here, as here, the defendant has led a continuous life of crime after the prior, there has been no 'washing out [of the prior]' and there is simply nothing mitigating about . . . [the age of the] prior." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.) Furthermore, in view of appellant's longstanding and continuous drug abuse, multiple state prison terms, and violations of probation and parole, his prospects for rehabilitation are extremely bleak. (See *In re Handa* (1985) 166 Cal.App.3d 966, 974 ["in the case of an addiction of long standing, [the sentencing court may find] that the defendant was at fault for failing to take steps to break the addiction"].)

Finally, the present offense is not, as appellant maintains, "as inoffensive as a felony could be." "The obvious purpose of [section 4573.9 and related statutes] is 'to deter the presence of illicit drugs in custodial institutions'; the statutes are 'deemed necessary to ensure orderly administration and security within such institutions. [Citations.]'" (*Lee, supra*, 136 Cal.App.4th at p. 536.) "Although the drugs might be intended merely for the recipient inmate's personal use, the existence of what amounts to a smuggling operation makes it much more likely there will be further distribution within the prison." (*Id.* at p. 537.) Where, as

15

here, there is a conspiracy, "'"[c]oncerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. . . . Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise." . . . [']" (*Id.* at p. 529.)

*Imposition of Upper Term*

Appellant claims that the trial court failed to exercise its discretion in selecting the six-year upper term for appellant's present offense. But the record shows that the trial court exercised its discretion in specifying the aggravating circumstances that warranted imposition of the upper term. The court stated, "The circumstances in aggravation, and for the record, are: The manner in which the crime was carried out indicated planning and sophistication; prior convictions are numerous; served prior numerous prison terms; the defendant was a sentenced inmate when the crime was committed; the defendant's prior performance on probation and parole have been unsatisfactory." In any event, appellant forfeited his failure-to-exercise-discretion claim by not raising it below. (*People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*) ["the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"].)

Appellant argues that the trial court abused its discretion because "[t]he circumstances in aggravation and mitigation . . . were misconstrued and misrepresented," the "trial court failed to consider any circumstances in mitigation," and some of the

16

aggravating circumstances were elements of the offense. (See *Scott*, *supra*, 9 Cal.4th at p. 350 [court may not "use a fact constituting an element of the offense either to aggravate or to enhance a sentence"]; Cal. Rules of Court, rule 4.420(d).) These arguments are also forfeited because they were not made in the trial court. The forfeiture doctrine applies to "cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*Scott*, *supra*, at p. 353.) The *Scott* court explained: "Although the [trial] court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention." (*Ibid*.) "In essence, claims deemed waived on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner." (*Id*. at p. 354.)

"Of course, there must be a meaningful opportunity to object to the kinds of claims otherwise deemed waived [pursuant to the *Scott*] decision. This opportunity can occur only if, during the course of the sentencing hearing itself and before objections are made, the parties are clearly apprised of the sentence the court intends to impose and the reasons that support any discretionary choices." (*Scott*, *supra*, 9 Cal.4th at p. 356.) Appellant contends, "There was no meaningful opportunity . . . to object . . . because the trial court did not state the circumstances in aggravation until after the [upper] term was imposed." But

17

the court gave no indication that its imposition of the upper term was final and unmodifiable. After the trial court had stated the circumstances in aggravation, it said, "All right, anything else we need to cover?" The court's question provided appellant an opportunity to object to the circumstances in aggravation. Instead, appellant's counsel told the court that his client had refused to sign a "relinquishment form for firearms." Moreover, the trial court merely repeated the circumstances in aggravation listed in the probation report, which was provided to counsel before sentencing. The trial court did not add any new circumstances in aggravation. We therefore conclude that appellant had a meaningful opportunity to object to the circumstances in aggravation.

*Claim of Ineffective Assistance of Counsel*

Appellant maintains that his counsel was ineffective for failing to object to imposition of the six-year upper term. "'[T]o demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citations.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." . . .'" (*In re Avena* (1996) 12 Cal.4th 694, 721.) The defendant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." (*People v. Williams* (1988) 44

18

Cal.3d 883, 937 (*Williams*).)  In view of appellant's numerous prior convictions, prior prison terms, and parole/probation violations, he has failed to carry his burden of showing that, but for counsel's failure to object, it is reasonably probable that the trial court would have imposed the middle or lower term.  The probation report found no circumstances in mitigation.

Appellant claims that he "received ineffective assistance of counsel in so far as trial counsel failed to introduce critical medical records at sentencing. . . .  Although the trial court had erroneously rejected the evidence for consideration in the context of [the] *Romero* [motion], it would have been pertinent to renew the request at the time of deciding the length of the sentence that would be imposed."  Appellant has failed to show that counsel was deficient or that his alleged deficiency prejudiced appellant "as a 'demonstrable reality.'" (*Williams*, *supra*, 44 Cal.3d at p. 937.)  The trial court was aware of appellant's medical problem. During the hearing on the *Romero* motion, appellant told the court that he had hepatitis C, cirrhosis of the liver, and a tumor on his liver.  At the conclusion of the sentencing hearing, the court said to appellant, "[H]ope the doctors are going to give you some comfort."  There is no evidence as to the content of the medical records.  Thus, it is speculative whether the introduction of the records would have resulted in a reduced term of imprisonment.

*Consecutive Sentencing*

In 2012 the voters approved Proposition 36, an initiative measure known as the Three Strikes Reform Act of 2012. Proposition 36 repealed section 1170.12, subdivision (a)(8), which provided, "Any sentence imposed pursuant to this section [i.e., the Three Strikes law,] will be imposed consecutive to any other

19

sentence which the defendant is already serving, unless otherwise provided by law."  Proposition 36 did not repeal the identical provision in section 667, subdivision (c)(8).  It appears that, based on section 667, subdivision (c)(8), the trial court ordered that the 12-year prison term for the present offense shall run consecutively to the prison term previously imposed for the prior 2018 possession for sale conviction.  The prosecutor stated, "[I]t's a mandatory consecutive sentence."

The People concede that Proposition 36's failure to repeal section 667, subdivision (c)(8) "would appear to be [a drafting] oversight."  Thus, the People argue that the trial court had discretion to run the 12-year prison term concurrently with the prior prison term.  The People conclude, "Remand is required for the trial court to exercise its discretion whether to impose sentence concurrently [with] the sentence for which appellant was incarcerated" when he committed the present offense.  (Bold and capitalization omitted.)  We agree.  (See *People v. Buchanan* (2019) 39 Cal.App.5th 385, 395, fn. 2 (dis. opn. of Needham, J.) ["the failure to delete section 667, subdivision (c)(8) in addition to section 1170.12, subdivision (a)(8), appears to be an oversight"].)

*Disposition*

The matter is remanded to the trial court with directions to exercise its discretion whether to run the 12-year prison term for the present offense concurrently with or consecutively to the prison term previously imposed for the prior 2018 possession for sale conviction.  Nothing in this opinion is intended  to suggest how the trial court should rule on this issue.  In all other respects, the judgment is affirmed.  If the trial court decides to impose a concurrent sentence, the court shall prepare an

amended abstract of judgment and send a certified copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.

We concur:


PERREN, J.


TANGEMAN, J.

Kevin M. Seibert, Judge

Superior Court County of Tuolumne

_____

Law Offices of Brad Poore and Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Louis M. Vasquez, Supervising Deputy Attorney General, Amanda D. Cary, Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.